**SO ORDERED.**

**SIGNED this 11 day of June, 2009.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

IN RE:                                                           CASE NO.

JOHN ALOYSIUS DISTLER,                              09-00707-8-RDD
JANET EILEEN DISTLER,

     DEBTORS

### ORDER EXCUSING DEBTORS FROM FILING REQUIRED SCHEDULE "I" AND SETTING ALTERNATIVE DATE FOR DETERMINING CURRENT MONTHLY INCOME

Pending before the Court is the Motion to Excuse the Requirement of Filing a Schedule I and for Setting an Alternative Date for Determining Debtors' Current Monthly Income (the "Motion") filed by John Aloysius Distler and Janet Eileen Distler (the "Debtors") on February 3, 2009 and the Objection to the Motion (the "Objection") of Queensborough National Bank & Trust ("Queensborough") filed on February 26, 2009. A hearing on the Motion and Objection was held on May 7, 2009 in Fayetteville, North Carolina.

Queensborough objects to an alternative date for calculating the Debtors' currently monthly income and proposed dividend to be paid to unsecured creditors. Queensborough, the largest

unsecured creditor in the Debtors' case, held a second mortgage on the Debtors' previous home that was located in Georgia. Prior to the Debtors' filing their petition, Chase Mortgage foreclosed on the note and first deed of trust which was secured by this residence. The foreclosure left an unpaid balance of $141,000.00 due to Queensborough on its note and second deed of trust. Based upon the Debtor's schedules, this amount represents approximately 75% of the Debtors' unsecured debt.

In support of its Objection, Queensborough asserts that even after the foreclosure on the residence in Georgia, the Debtors bought a home in North Carolina valued at $475,000.00. The current residence is subject to three mortgages with a monthly payment amount of $3,724 a month. In addition to the current residence, Queensborough notes that the Debtors intend to keep three vehicles on which they owe approximately $70,000.00. Based on the Debtors' proposed Chapter 13 Plan (the "Plan"), the combined monthly payment for the vehicles is approximately $1,791.07, including $372.60 per month for a 2005 SAAB, $775.26 per month for a 2007 Chevrolet Silverado, and $643.21 per month for the 2007 Hummer.

In conjunction with the petition, the Debtors filed their proposed Plan. The Plan proposes monthly payments of $300.00 for 60 months. This amount, after payment to counsel and the trustee, will allow for a disbursement of $14,110.00 for unsecured creditors over the life of the plan. As of the date of the hearing, the Plan had not been confirmed.

Queensborough believes that this dividend is insufficient and that the retention of three vehicles by the Debtors called into question their true financial situation. Queensborough asserts that if the Debtors' were required to file Schedule I, it would reveal specific information regarding the dependents, the male debtor's employment situation, and the female debtor's current earnings.

**DISCUSSION**

Pursuant to 11 U.S.C. §521(a)(1)(B)(ii), unless the court orders otherwise, one of the debtor's duties in a bankruptcy proceeding is to file a schedule of current income and current expenditures (Schedule I). Current monthly income is the average monthly income from all sources received without regard to whether such income is taxable income, derived during the six-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the required schedule of current income; or, the date on which current income is determined by the court if the debtor does not file the schedule of current income. . . . 11 U.S.C. §101(10A)(A)(I)-(ii).

The Debtors timely filed their Schedules and Statements but did not file Schedule I. This omission was intentional as the Debtors sought to have the court make a determination as to how the Debtors' current monthly income should be computed. 11 U.S.C. § 101(10A)(A)(I)-(ii). As of the petition date, Mr. Distler's current monthly income was $4,285.56, based on the $25,713.38 in income he received from Synagro Southwest between July 1, 2008 through December 31, 2008. Mr. Distler is a senior operations manager at Synagro Southwest handling their projects in the southeastern United States. Mr. Distler testified that over the past few years, Synagro Southwest has not only seen a reduction in workforce, but has also asked its employees to take salary reductions in order to stay in business.

In September 2008, Mr. Distler noticed some changes in his health and in December, doctors found a tumor on his bladder. In late December, he was diagnosed with an aggressive form of

bladder cancer. On March 4, 2009, Mr. Distler had an experimental procedure performed to combat the cancer. He also had his gall bladder removed. Since that time, Mr. Distler has been in and out of the hospital because of complications from the surgery and for the treatment of his cancer.

As of the hearing date, Mr. Distler is unable to work and has exhausted any accrued sick and vacation leave benefits. These benefits were paid to Mr. Distler at his regular rate of pay during the early months of 2009. He is currently out of work under the Family Medical Leave Act and is receiving short term disability payments in the amount of $581.00 per week. Should he be out of work for an extended period, Mr. Distler may be eligible for long term disability benefits. However, Mr. Distler testified that he hoped to go back to work at the conclusion of his treatment.

Mrs. Distler is a veterinarian and previously owned a private practice in Georgia. Prior to moving to North Carolina, she sold her practice and, as part of that sale, was restricted by a non-compete agreement. She is currently employed as an associate veterinarian at Highland Animal Hospital earning $120,000.00 a year and may be eligible for a $12,000.00 bonus. Mr. Distler stated his wife's income is stable.

The Distlers also have one daughter who is enrolled in private school. Mr. Distler stated that his daughter has a health condition that needs regular monitoring. The private school setting offers smaller class sizes to allow teachers a better opportunity to supervise and provide the care that his daughter needs.

A court should consider the good faith request of the debtor, as well as the totality of the circumstances surrounding the request in determining the date for computation of a debtor's current monthly income. *In re Hoff*, 2009 WL 798870 (Bankr. E.D.N.C. 2009). In this case, Mr. Distler's

health has continued to decline since the filing of the petition. In addition, since that time, he has exhausted all of his vacation and sick leave and is currently receiving short term disability. Mr. Distler is not voluntarily unemployed. In fact, he hopes to return to work. However, even if his health will allow him to do so, the fledgling economy may limit his ability to earn the same amount as he earned prepetition. Mrs. Distler continues to work full-time and her salary primarily supports the family.

Given the fact that Debtors' financial situation deteriorated significantly during the six months prior to the filing of the petition and has continued to decline based on the limited funds Mr. Distler receives in connection with his short term disability payment, the Debtors request that the Court modify the date of the commencement of the six month look back period to July 31, 2009.

Based upon their current financial situation and short term forecast of the Distlers' income producing ability, if they were required "to use the pre-petition six-month average as their current monthly income [when there is a significant, involuntary decrease in actual income], their plan would not be feasible..." *In re Hoff*, 2009 WL 798870 * 2 (citing *In re Ingram*, 2006 WL 6070518 *1 (Bankr. E.D.N.C. 2006). Therefore, the Court finds, based on the totality of the circumstances and the Debtors' good faith, the Debtors' current monthly income under Section 101(10A)(A)(ii) shall be calculated for the six month period prior to June 30, 2009. This date takes into account several months where Mr. Distler received his salary through payment of his sick leave and vacation benefits, as well as several months based on the amount received by Mr. Distler in connection with his short term disability. The Court finds that the totality of the circumstances and the unknown

impact that Mr. Distler's health may have on his earning capacity warrants the modification of the date to be used by the Debtors' for calculation of their current monthly income.

**SO ORDERED**.

**END OF DOCUMENT**